# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)  No. 19-0003** (BOR Appeal No. 2053060)
　　　　　　　　　　(Claim No. 2017018624)

**DAVID GOFF,**
**Claimant Below, Respondent**

**FILED**

February 21, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by Counsel Denise D. Pentino, Aimee M. Stern, and Eli T. Humphries, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). David Goff, by Counsel Robert L. Stultz, filed a timely response.

The issues on appeal are additional compensable conditions and medical benefits. The claims administrator denied the addition of subtalar effusion and osteochondral lesion talus to the claim on December 27, 2017. On January 30, 2018, it denied a request for ultrasound guided injection of the tibio-talar joint. The Office of Judges reversed the decisions in its June 22, 2018, Order, held the claim compensable for subtalar effusion and osteochondral lesion talus, and authorized ultrasound guided injections of the tibio-talar joint. The Order was affirmed by the Board of Review on December 3, 2018.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Goff, a coal miner, slipped on ice and injured his right ankle in the course of his employment. Treatment notes from United Hospital Center emergency room on January 31, 2017, indicate Mr. Goff was brought by ambulance after falling on ice. He was diagnosed with a right ankle sprain. The Employees' and Physicians' Report of Injury was also completed that day and indicates Mr. Goff slipped on an ice covered concrete pad and injured his right ankle. The

1

physician's section was completed at United Hospital Center and lists the diagnosis as right ankle sprain.

A February 8, 2017, treatment note by Cecil Holbert, M.D., indicates Mr. Goff was injured when he fell on ice. A right ankle x-ray showed mild degenerative changes, a small heel spur, and a small periarticular ossicle at the posterior ankle joint that likely was not acute. Mr. Goff was diagnosed with a severe right ankle sprain and prescribed physical therapy. On February 15, 2017, he returned for a follow up where it was noted that he was making some progress with physical therapy and should be able to return to work in approximately three weeks. The claim was held compensable for right ankle sprain on February 15, 2017.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on March 31, 2017, in which he found that Mr. Goff had not reached maximum medical improvement. Dr. Mukkamala recommended continued physical therapy for an additional three weeks. At that point, Mr. Goff should be able to return to work without restrictions. Dr. Holbert completed a physician update on April 25, 2017, in which he stated that Mr. Goff had completed thirty-one physical therapy sessions and still had significant pain. On May 1, 2017, Dr. Holbert noted that Mr. Goff reported increased pain and weakness in his ankle after twisting it on April 21, 2017. He diagnosed arthralgia and right ankle sprain.

Dr. Mukkamala performed a second independent medical evaluation on May 24, 2017, in which he stated that he would tentatively place Mr. Goff at maximum medical improvement. He explained that his symptoms are out of proportion to the physical findings. Mr. Goff was scheduled for an MRI of the right ankle so Dr. Mukkamala opined that if the MRI showed no significant, relevant findings, he would be at maximum medical improvement. A right ankle MRI was performed on June 4, 2017, and showed a subtle osteochondral lesion of the medial talar dome and subtalar joint effusion. In a June 13, 2017, supplemental report, Dr. Mukkamala stated that he concurred with a request for an orthopedic referral. He stated that Mr. Goff was not at maximum medical improvement.

William Dahl, M.D., evaluated Mr. Goff on July 10, 2017, and diagnosed ankle sprain and aspiration/injection intermediate joint or bursa. He recommended a corticosteroid injection in the tibio-talar joint. On July 27, 2017, Mr. Goff returned to Dr. Holbert who noted that he was awaiting authorization of a steroid injection. Dr. Holbert stated that Mr. Goff remained unable to work. A right ankle tibio-talar injection was performed by Peter Alasky, D.O., on September 22, 2017. Mr. Goff returned to Dr. Holbert on October 4, 2017. Dr. Holbert noted that Mr. Goff had a tibio-talar injection which provided pain relief for approximately three days. His symptoms gradually returned, and Mr. Goff reported that he was told he would need two to three injections for lasting relief.

On October 6, 2017, Dr. Mukkamala performed an independent medical evaluation in which he found that Mr. Goff had reached maximum medical improvement for his compensable injury. Dr. Mukkamala opined that Mr. Goff did not need further injections in the tibio-talar joint and could return to work immediately. Dr. Mukkamala noted that Mr. Goff's injury was eight

months prior and there were no physical findings to support his alleged symptoms. He also opined that the osteochondral lesion seen on MRI was likely not related to the compensable injury.

Dr. Holbert disagreed with Dr. Mukkamala's findings on November 8, 2017. He stated that Mr. Goff had no ankle problems prior to his compensable injury. He had almost complete relief from injection. Dr. Holbert opined that the MRI findings and injection were both related to the compensable injury. In a diagnosis update, Dr. Holbert requested that osteochondral lesion talus and subtalar effusion be added to the claim.

A causation review report was completed by Ronald Fadel, M.D., On December 20, 2017. Dr. Fadel opined that Mr. Goff's observed pathologies indicate he sustained significant trauma to his foot and ankle prior to the compensable injury, which is the cause of his osteochondral lesion. Further, the joint effusion is inconsequential and likely a result of degenerative changes. The claims administrator denied the addition of subtalar effusion and osteochondral lesion talus to the claim on December 27, 2017. On January 30, 2018, the claims administrator denied a request for ultrasound guided injection of the tibio-talar joint.

Mr. Goff testified in a deposition on March 21, 2018, that prior to the compensable injury, he had no problems with his right ankle. He stated that the joint injection did not cure his pain but gave him some relief. He was released to return to work after Dr. Mukkamala found he had reached maximum medical improvement; however, he still had pain and must limit his activities.

In its June 22, 2018, Order, the Office of Judges reversed the claims administrator's decisions, added subtalar effusion and osteochondral talus lesion to the claim, and authorized ultrasound guided tibio-talar joint injections. The Office of Judges found that Dr. Fadel's opinion, that the osteochondral lesion is the result of a prior trauma, to be unsupported by the evidence of record. There is no indication in Mr. Goff's medical records of a prior right ankle injury, and he testified that he had no prior right ankle or foot injuries. Further, no other physician of record made such findings. Dr. Fadel's report was therefore determined to be unreliable. The Office of Judges next looked to Dr. Mukkamala's reports. Dr. Mukkamala found on May 24, 2017, that Mr. Goff would be at maximum medical improvement following the MRI if no significant findings were discovered. On June 13, 2017, Dr. Mukkamala indicated that he reviewed the MRI which showed a subtle osteochondral lesion and subtalar joint effusion. He stated that an orthopedic referral would be appropriate and recommended the claims administrator approve the request. He stated that Mr. Goff was still not at maximum medical improvement. The Office of Judges concluded that Dr. Mukkamala's findings indicate he found Mr. Goff was not at maximum medical improvement due to an osteochondral lesion and subtalar joint effusion, which indicates he believed they were related to the compensable injury. Dr. Mukkamala then opined that the conditions were not related to the compensable injury in his final report. The Office of Judges determined that his opinion was unreliable due to the inconsistencies in his reports.

The Office of Judges determined that Mr. Goff showed by a preponderance of the evidence that he sustained an osteochondral lesion and subtalar effusion as a result of his compensable injury. He had no foot or ankle problems prior to his fall. Despite conservative treatment for an ankle sprain, he continued to have pain in his right ankle. Lastly, osteochondral lesion and subtalar

joint effusion have been verified by an MRI. The conditions were therefore added to the claim. The Office of Judges also found that ultrasound guided injection of the tibio-talar joint should be authorized. Dr. Alasky performed one injection which provided excellent pain relief for a few days. He told Mr. Goff that it would take two to three injections for sustained relief. Dr. Holbert concurred with the need for further injections. The Office of Judges therefore found the injections should be authorized. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on December 3, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1 (2008), employees who receive injuries in the course of and as a result of their covered employment are entitled to benefits. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Compensation Commissioner*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Mr. Goff showed by a preponderance of the evidence that he sustained an osteochondral lesion and subtalar joint effusion as a result of his compensable injury. Dr. Fadel's opinion was properly disregarded as there is no evidence of a right ankle injury prior to the compensable fall. Dr. Mukkamala's reports were also properly disregarded since they contained conflicting opinions.

Pursuant to West Virginia Code § 23-4-1(a) (2008), workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. West Virginia Code § 23-4-3(a)(1) (2005) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. Since the conditions of osteochondral lesion and subtalar joint effusion are compensable, treatment in the form of ultrasound guided injections is proper.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 21, 2020**


**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison